2026-___

# United States Court of Appeals
## for the Federal Circuit

———————————

In re MAPLEBEAR INC. d/b/a INSTACART,

*Petitioner*

———————————

On petition for a writ of mandamus to the United States Patent and Trademark Office, Patent Trial and Appeal Board, in IPR2025-00958

———————————

## PETITION FOR A WRIT OF MANDAMUS

———————————

John R. Hutchins
Camille D. Sauer
Paul T. Qualey
BANNER & WITCOFF, LTD.
1100 13th Street, NW, Suite 1200
Washington, DC 20005
Tel: (202) 824-3000
Fax: (202) 824-3001

*Attorneys for Petitioner Maplebear Inc. d/b/a/ Instacart*

Dated: October 21, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** TBD

**Short Case Caption** In re Maplebear Inc. dba Instacart

**Filing Party/Entity** Maplebear Inc. dba Instacart

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/21/2025

Signature: /s/ John R. Hutchins

Name: John R. Hutchins

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Maplebear Inc. d/b/a Instacart | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| Chunhsi Andy Mu (Banner & Witcoff, Ltd.) | Jonathan Peloquin (Banner & Witcoff, Ltd.) | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)    ☐  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................ vi

STATEMENT OF RELATED CASES ................................................ xii

INTRODUCTION ............................................................................... 1

RELIEF SOUGHT .............................................................................. 4

ISSUE STATEMENT .......................................................................... 4

BACKGROUND .................................................................................. 5

    A.    Congress established IPR, and the USPTO created its own
          IPR institution criteria ........................................................... 5

    B.    Without notice and comment, the USPTO invented new,
          evolving "settled expectations" and "road mapping" rules ................. 7

    C.    The USPTO denied institution here based on "settled
          expectations" and "road mapping" ...................................... 10

LEGAL STANDARD ........................................................................ 10

WHY MANDAMUS IS WARRANTED ............................................ 11

    I.    The USPTO's errors are clear and indisputable .................. 11

    A.    The USPTO violated the APA and AIA by imposing
          limitations on institution without notice-and-comment
          rulemaking ........................................................................... 11

    B.    The USPTO violated the APA by applying the "settled
          expectations" and "road mapping" rules without authority or
          reasoned decision making ..................................................... 15

    C.    The USPTO violated due process by unlawfully applying a
          new bar to this IPR petition ................................................. 19

**TABLE OF CONTENTS** *(continued)*

Page

D. The USPTO exceeded its authority – in violation of the APA and the Constitution – by inventing IPR institution criterion untethered to the AIA .........................................................................22

  1. Congress did not empower the Director to create extra-statutory institution criteria .......................................................23

  2. Congress did not authorize the Director to deny institution because a patent is "old" ..........................................27

  3. Congress did not authorize the Director to deny institution because a patent was previously challenged by an unrelated party ...................................................................28

II. The remaining mandamus criteria are satisfied ..................................29

A. The USPTO's errors are reviewable in mandamus............................29

B. Petitioner has no adequate means of relief.........................................34

C. Mandamus is appropriate given the nature of the USPTO's related violations of the APA, AIA, and the Constitution .................34

CONCLUSION .................................................................................................36

CERTIFICATE OF COMPLIANCE WITH TYPE–VOLUME LIMITATION ...................................................................................................37

PROOF OF SERVICE ......................................................................................38

# TABLE OF AUTHORITIES

## CASES

*Am. Bar Ass'n v. U.S. Dep't of Educ.*,
370 F. Supp. 3d 1 (D.D.C. 2019)........................................................22

*Amazon Web Servs., Inc., v. Croga Innovations, Ltd.*,
IPR2025-00884, Paper 9 (PTAB September 3, 2025) ...................................9, 21

*Amazon.com, Inc. v. VirtaMove, Corp.*,
IPR2025-00561, 2025 WL 1913383 (PTAB July 11, 2025)..............................8

*Appalachian Power Co. v. EPA*,
208 F.3d 1015 (D.C. Cir. 2000)..........................................................12

*Apple Inc. v. Fintiv, Inc.*,
IPR2020-00019, 2020 WL 2126495 (PTAB Mar. 20, 2020)..............................6

*Apple Inc. v. Vidal*,
63 F.4th 1 (Fed. Cir. 2023) ................................................... 30, 31, 33

*Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*,
72 F.4th 284 (D.C. Cir. 2023)............................................................15

*Bittner v. United States*,
598 U.S. 85 (2023)......................................................................26

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988).....................................................................15

*Cambridge Indus. USA, Inc. v. Applied Optoelectronics, Inc.*,
IPR2025-00433, 2025 WL 1773382 (PTAB June 26, 2025)..............................8

*Cellco P'ship v. Gen. Access Sols., Ltd.*,
IPR2023-00978, Paper 20 (PTAB Dec. 14, 2023) ...........................................18

*Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affs.*,
464 F.3d 1306 (Fed. Cir. 2006) ........................................................11

*Cuozzo Speed Techs. v. Commerce for Intellectual Prop.*,
579 U.S. 261 (2016)................................................................. passim

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Dabico Airport Sols. Inc. v. AXA Power ApS*,
    IPR2025-00408, Paper 21 (PTAB June 18, 2025) ........................................8, 20

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*,
    591 U.S. 1 (2020) ................................................................................... 20, 21

*FDA v. Wages & White Lion Invs., L.L.C.*,
    604 U.S. 542 (2025) ......................................................................... 16, 19, 21

*Ford Motor Co. v. Neo Wireless LLC*,
    IPR2023-00763, Paper 28 (PTAB March 22, 2024) ........................................18

*Gallo v. Dep't of Transp.*,
    725 F.3d 1306 (Fed. Cir. 2013) ..........................................................................27

*General Plastic Industries Co., Ltd. v. Canon Kabushiki Kaisha*,
    IPR2016-01357, Paper 19 (PTAB Sept. 6, 2017)..............................................17

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995)............................................................................................25

*Heckler v. Chaney*,
    470 U.S. 821 (1985)............................................................................................33

*IGT v. Zynga Inc.*,
    144 F.4th 1357 (Fed. Cir. 2025) ........................................................................32

*In re Brunetti*,
    151 F.4th 1367 (Fed. Cir. Aug. 26, 2025) ........................................................16

*In re Cambridge Industries USA, Inc., et al.*,
    No. 26-101 (Fed. Cir. Oct. 14, 2025), ECF No. 2 ...............................................3

*In re Cray Inc.*,
    871 F.3d 1355 (Fed. Cir. 2017) ..........................................................................34

*In re Google LLC, et al.*,
    No. 25-144 (Fed. Cir. Aug. 18, 2025). ECF No. 2 ..............................................3

*In re HighLevel, Inc.*,
    No. 25-148 (Fed. Cir. Aug. 29, 2025), ECF No. 2 ...............................................3

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*In re Inari Agriculture, Inc.*,
  No. 25-150 (Fed. Cir. Sep. 5, 2025), ECF No. 2 ................................................. 3

*In re Motorola Solutions, Inc.*,
  No. 25-134 (Fed. Cir. June 23, 2025), ECF No. 2 ............................................... 3

*In re Motorola Solutions*,
  No. 25-134 (Fed. Cir. Aug. 4, 2025), ECF No. 28 ............................................ 23

*In re Palo Alto Networks, Inc.*,
  44 F. 4th 1369 (Fed. Cir. 2022) ......................................................................... 34

*In re Sandisk Tech., Inc., et al.*,
  No. 25-152 (Fed. Cir. Sep. 18, 2025), ECF No. 2 ............................................. 3

*In re SAP Am., Inc.*,
  No. 25-132 (Fed. Cir. June 16, 2025), ECF No. 2 ............................................. 3

*Micron Tech., Inc. v. Sonrai Memory Ltd.*,
  IPR2023-00909, Paper 7 (PTAB Nov. 28, 2023) ............................................. 18

*Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*,
  989 F.3d 1375 (Fed. Cir. 2021) .................................................................. passim

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health
  Admin.*,
  595 U.S. 109 (2022) ............................................................................................ 24

*NLRB v. Wyman-Gordon Co.*,
  394 U.S. 759 (1969) ...................................................................................... 11, 15

*Paralyzed Veterans of Am. v. West*,
  138 F.3d 1434 (Fed. Cir. 1998) .................................................................... 12, 13

*Perez v. Mortgage Bankers Ass'n*,
  575 U.S. 92 (2015) .............................................................................................. 12

*Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.*,
  896 F.3d 1322 (Fed. Cir. 2018) ......................................................................... 23

*SAS Inst., Inc. v. Iancu*,
  584 U.S. 357 (2018) .............................................................................. 30, 31, 32

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Sotera Wireless, Inc. v. Masimo Corp.*,
　IPR2020-01019, 2020 WL 7049373 (PTAB Dec. 1, 2020) .................................7

*Taylor Energy Co. v. Dep't of the Interior*,
　990 F.3d 1303 (Fed. Cir. 2021) .........................................................................33

*Thryv, Inc v. Click-To-Call Techs., LP*,
　590 U.S. 45 (2020)..............................................................................................32

*U.S. Telecom Ass'n v. FCC*,
　400 F.3d 29 (D.C. Cir. 2005)..............................................................................14

*Valve Corp. v. Elec. Scripting Prods., Inc.*,
　IPR2019-00062, Paper 11 (PTAB Apr. 2, 2019) ........................................ 17, 18

*Vivendum Product Solutions, Inc. v. Rotolight Ltd.*,
　IPR2023-01218, Paper 12 (PTAB Apr. 19, 2024) ............................................18

**STATUTES**

35 U.S.C. §135(a)(1)..............................................................................................26

35 U.S.C. §282 .......................................................................................................28

35 U.S.C. §311 .........................................................................................................5

35 U.S.C. §311(c) .....................................................................................................5

35 U.S.C. §312(a)(4)...............................................................................................14

35 U.S.C. §314(a) ........................................................................................ 5, 23, 26

35 U.S.C. §314(d) .....................................................................................................3

35 U.S.C. §315(b) ...................................................................................................26

35 U.S.C. §315(c) ...................................................................................................26

35 U.S.C. §315(d) ........................................................................................ 23, 25, 26

35 U.S.C. §315(e) ...................................................................................................26

35 U.S.C. §316(a)(2)................................................................................. 5, 14, 23, 25

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

35 U.S.C. §316(b) ........................................................................25

35 U.S.C. §316(e) ........................................................................28

35 U.S.C. §321 ..............................................................................5

35 U.S.C. §321(c) ........................................................................28

35 U.S.C. §322 ..............................................................................5

35 U.S.C. §323 ..............................................................................5

35 U.S.C. §324 ..............................................................................5

35 U.S.C. §325 ..............................................................................5

35 U.S.C. §325(d) .............................................................. 23, 25, 26

35 U.S.C. §326 ..............................................................................5

35 U.S.C. §327 ..............................................................................5

35 U.S.C. §328 ..............................................................................5

35 U.S.C. §329 ..............................................................................5

5 U.S.C. §551(4) ..........................................................................12

5 U.S.C. §553 ..............................................................................12

5 U.S.C. §553(b) ..........................................................................12

5 U.S.C. §706(2) ................................................................... passim

5 U.S.C. §706(2)(A) .......................................................... 15, 28, 30, 31

5 U.S.C. §706(2)(B) ......................................................................15

5 U.S.C. §706(2)(C) .......................................................... 15, 28, 30, 31

5 U.S.C. §706(2)(D) ......................................................................15

## TABLE OF AUTHORITIES *(continued)*

Page(s)

**REGULATIONS**

37 C.F.R. §42.108(e)...................................................................................6

**OTHER AUTHORITIES**

America Invents Act,
  Pub. L. No. 112–29, 125 Stat. 284 (September 16, 2011).................................28

American Inventors Protection Act of 1999,
  Pub. L. No. 106–113, §4608, 113 Stat. at 1501A–572 (November 29,
  1999) ............................................................................................28

*Changes Under Consideration to Discretionary Institution Practices,
  Petition Word-Count Limits, and Settlement Practices for America
  Invents Act Trial Proceedings Before the Patent Trial and Appeal Board*,
  88 Fed. Reg. 24,503 (April 21, 2023)...................................................6

H.R. Rep. No. 112-98 (2011)....................................................................5

*Patent Trial and Appeal Board Rules of Practice for Briefing Discretionary
  Denial Issues, and Rules for 325(d) Considerations, Instituting Parallel
  and Serial Petitions, and Termination Due to Settlement Agreement*,
  89 Fed. Reg. 28,693 (April 19, 2024)...................................................6

*Request for Comments on Discretion to Institute Trials Before Patent Trial
  & Appeal Board*,
  85 Fed. Reg. 66,502 (Oct. 20, 2020) ....................................................7

*Revision to Rules of Practice Before the Patent Trial and Appeal Board*,
  90 Fed. Reg. 48,335 (Oct. 17, 2025) ....................................................6

**STATEMENT OF RELATED CASES**

U.S. Patent No. 9,454,748 ("the '748 patent) was asserted against Sprouts Farmers Market, Inc. and SFM, LLC d/b/a SF Markets, LLC (collectively "Sprouts") and against ALDI Inc. and ALDI (Texas) L.L.C. (collectively "ALDI") by Fall Line Patents, LLC ("Fall Line") in the United States District Court for the Eastern District of Texas: *Fall Line Patents, LLC v. Sprouts Farmers Market, Inc.*, No. 5:24-cv-182 (E.D. Tex.) and *Fall Line Patents, LLC v. ALDI Inc.*, No. 5:24-cv-172 (E.D. Tex.) (collectively, "Texas District Court Litigations"). Sprouts and ALDI are customers of Petitioner Instacart. Petitioner Instacart is not a party to any of the Texas District Court Litigations.

Petitioner filed a declaratory judgment of non-infringement action against Fall Line in the United States District Court for the Northern District Court of Oklahoma ("Petitioner's DJ Action"): *Maplebear, Inc., D/B/A Instacart v. Fall Line Patents, LLC*, No. 25-cv-00137-MTS (N.D. Okla.).

The '748 patent has been the subject of the following district court cases:

- *Fall Line Patents, LLC v. Lowe's Companies, Inc. et al.*, 5:24-cv-00181 (E.D. Tex.), which was consolidated into *Fall Line Patents, LLC v. 7-Eleven, Inc. et al.*, 5:24-cv-00167 (E.D. Tex.) ("the 167 E.D. Tex. case").

- *Fall Line Patents, LLC v. Sprouts Farmers Market, Inc. et al.*, 5:24-cv-00182 (E.D. Tex.), which was consolidated with the 167 E.D. Tex. case and is pending.

- *Fall Line Patents, LLC v. DoorDash, Inc. et al.*, 5:24-cv-00179 (E.D. Tex.), which was consolidated with the 167 E.D. Tex. case and is pending.

- *Fall Line Patents, LLC v. Best Buy Co., Inc. et al.*, 5:24-cv-00174 (E.D. Tex.), which was consolidated with the 167 E.D. Tex. case and is pending.

- *Fall Line Patents, LLC v. Brookshire Grocery Company*, 5:24-cv-00175 (E.D. Tex.), which was consolidated with the 167 E.D. Tex. case and is pending.

- *Fall Line Patents, LLC v. ALDI Inc. et al.*, 5:24-cv-00172 (E.D. Tex.), which was consolidated with the 167 E.D. Tex. case and is pending.

## INTRODUCTION

Mandamus is available in extraordinary circumstances, and the USPTO's assertion of unbridled authority over IPR institution is extraordinary. Here, the USPTO denied institution based on purported rules that "old" patents gain "settled expectations" that immunize them from IPR and that patents that have been subject to a prior challenge allow for "road mapping" and are also immunized from IPR. Those ad hoc policy pronouncements are beyond the USPTO's authority. They are not found in any statute. They did not exist when Petitioner filed its IPR petition. And they were imposed without notice-and-comment regulation. The USPTO's recent Notice of Proposed Rulemaking ("NPRM") seeks to substantively codify these so-called rules into binding regulations, confirming that the agency's prior guidance was legislative in nature and required APA procedures from the outset.

This "settled expectations" notion has dramatically transformed IPR practice. For the past thirteen years since IPR's inception in 2012, all patents were equally eligible for IPR no matter their age. After all, Congress designed IPR with no deadline for "old" patents. Consistent with that framework, the USPTO regularly instituted IPR and canceled claims for patents of every vintage, including "old" patents. But everything changed this year. Out of nowhere, the Acting Director began denying institution because patents were too "old." In just four months, the USPTO denied over 200 IPR petitions on that ground—despite the USPTO's

consistent, *decade-plus* practice to the contrary, instituting and resolving IPRs in 2,269 cases with similarly "old" patents.[1]  Now, would-be petitioners must scour newly issued patents, predict which might someday be asserted against them (however baselessly), then launch pre-emptive IPR challenges in the first few years of the patent's life—or forfeit their statutory rights to seek IPR.

The "road mapping" criterion is also a dramatic change to IPR practice.  Prior precedent allowed for discretionary denial of a serially-filed petition when the same petitioner, or petitioners having a "significant relationship," filed both IPR petitions.  Despite claiming to act consistent with prior Board precedent, the Acting Director began denying institution because patents were previously subject to a prior IPR challenge, without any consideration of a relationship, or lack thereof, between respective petitioners.[2]  Thus, would-be petitioners must now also pursue IPR challenges before any other party challenges first.

Congress enacted the AIA without any such limits on IPR.  It was also news to Petitioner, who filed its IPR petition before any decisions citing to "settled

---

[1] Jonathan DeFosse et al., *Data Undermines USPTO's 'Settled Expectations' Doctrine*, Law360 (Aug. 29, 2025), *available at* https://www.law360.com/articles/2381350 (Appx100-104).

[2] Indeed, the recent NPRM rule changes seek to enlarge this prohibition and preclude IPR of any patent claim that was found not invalid, without considering the relationship of the patent challengers or any other aspects of the respective challenges.

expectations" or "road mapping" (by unrelated parties) rules abruptly appeared. And this is only the latest twist in the USPTO's dizzying reconstruction of its institution authority. Over the past few months, the Acting Director has replaced preexisting institution rules with an unpredictable flurry of new ones—all without notice and comment. These novel, erratic, demanding hurdles have already drawn at least seven other mandamus challenges.[3]

While 35 U.S.C. §314(d) generally bars appeals attacking institution determinations in "ordinary" case-specific "dispute[s]," §314(d) does not bar review of agency "shenanigans," including rulings that violate constitutional rights or exceed statutory authority. *Cuozzo Speed Techs. v. Commerce for Intellectual Prop.*, 579 U.S. 261, 271, 274-75 (2016). The so-called "settled expectations" rule and the new application of the "road mapping" rule are the prototypical "shenanigans" requiring judicial redress. Mandamus is the sole mechanism available to obtain that relief, and the Court should grant this petition.

---

[3] *In re SAP America, Inc.*, No. 25-132 (Fed. Cir., filed June 16, 2025); *In re Motorola Solutions, Inc.*, No. 25-134 (Fed. Cir., filed June 23, 2025); *In re Google LLC, et al.*, No. 25-144 (Fed. Cir., filed Aug. 18, 2025); *In re HighLevel, Inc.*, No. 25-148 (Fed. Cir., filed Aug. 29, 2025); *In re Inari Agriculture, Inc.*, No. 25-150 (Fed. Cir., filed Sep. 5, 2025); *In re Sandisk Tech., Inc., et al.*, No. 25-152 (Fed. Cir., filed Sep. 18, 2025); *In re Cambridge Industries USA, Inc., et al.*, No. 26-101 (Fed. Cir., filed Oct. 14, 2025).

## RELIEF SOUGHT

Maplebear Inc. d/b/a Instacart ("Petitioner") respectfully requests a writ vacating the decision denying institution of IPR2025-00958. Petitioner requests that the Court direct the USPTO to reconsider institution solely under the statutory criteria and the prior "binding" rule that applied before the Recession of the June 2022 Memo. At a minimum, the Court should direct the USPTO to reconsider institution without the USPTO's new "settled expectations" and "road mapping" so-called rules that violate the APA, the AIA, and the Constitution.

## ISSUE STATEMENT

1. Whether the USPTO violated the APA and AIA by imposing limitations on IPR institution without notice-and-comment rulemaking, including:

   a. Applying the new "settled expectations" rule without authority or reasoned decision making; and

   b. Applying the new "road mapping" rule without authority or reasoned decision making;

2. Whether the USPTO violated due process by unlawfully applying a new bar to IPR2025-00958; and

3. Whether the USPTO exceeded its authority—in violation of the APA and the Constitution's separation of powers—by inventing IPR institution criteria untethered to the AIA.

# BACKGROUND

## A.    Congress established IPR, and the USPTO created its own IPR institution criteria

When Congress enacted the AIA, it expressed concerns that "questionable patents" were "too easily obtained" and "too difficult to challenge."  H.R. Rep. No. 112-98, at 39-40 (2011).  Congress thus established IPR specifically to allow anyone to petition the USPTO to conduct a limited review of granted patents.  35 U.S.C. §311.  A different form of review, post-grant review (PGR), is also available, but only for the first 9 months of a patent's life.  35 U.S.C. §§321-329.  After the first 9 months, and after PGR terminates, Congress made patents eligible for IPR.  35 U.S.C. §311(c).  Notably, Congress did not impose any maximum patent age for IPR. *Id*.  Congress also did not impose any limit on the number of IPRs that may be filed against a single patent.  *Id*.

Congress provided clear instructions to the Director to decide whether to institute IPR.  Namely, the Director is to determine whether "there is a reasonable likelihood that the petitioner would prevail." 35 U.S.C. §314(a).  Further, the Director should "prescribe regulations" providing "the standards" for "showing…sufficient grounds to institute a review under section 314(a)." 35 U.S.C. §316(a)(2).

The USPTO has repeatedly initiated the notice-and-comment rulemaking process, but has thus far abandoned the process before completion in each instance.

In 2023, the USPTO issued an advance notice of proposed rulemaking.  Appx21-47.  In 2024, it issued a notice of proposed rulemaking.  Appx48-72.  And in 2025, the USPTO reiterated plans "to pursue notice-and-comment rulemaking."  Appx105-106.  Just last week, the USPTO issued its NPRM that seeks to substantively codify the "road mapping" rule into proposed binding regulation under 37 C.F.R. §42.108(e).  "*Revision to Rules of Practice Before the Patent Trial and Appeal Board*," 90 Fed. Reg. 48,335 (Oct. 17, 2025).

Without any regulations prescribed through notice-and-comment, IPR petitioners have been left to rely upon "precedential" decisions and "guidance" documents issued by the USPTO.  Specifically, in 2020 the USPTO designated as precedential the *Fintiv* factors, governing IPR institution in the face of parallel district-court litigation.  *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, 2020 WL 2126495, at *2 (PTAB Mar. 20, 2020) (precedential).  The USPTO followed *Fintiv* with "binding agency guidance" governing institution, reaffirming that the *Fintiv* factors are to be applied to the Director's institution decisions.  Appx12-20 ("June 2022 Memorandum").  The Director also refined the *Fintiv* framework by limiting the PTAB's discretion: "the PTAB will not discretionarily deny institution in view of parallel district court litigation" if a petitioner "stipulate[es] not to pursue in a parallel proceeding" any grounds "that could have reasonably been raised before the

PTAB." *Sotera Wireless, Inc. v. Masimo Corp.*, IPR2020-01019, 2020 WL 7049373, at *7 (PTAB Dec. 1, 2020) (precedential in pertinent part); Appx12-20.

Although the guidelines established in the June 2022 Memorandum were not established through official notice-and-comment rulemaking, the USPTO requested public comments before publishing its discretionary denial policies. Appx12-20; Appx73-79. As part of this process, the Director considered "822 comments from a wide range of stakeholders," and only then issued the June 2022 Memorandum. Appx13.

### B.    Without notice and comment, the USPTO invented new, evolving "settled expectations" and "road mapping" rules

On February 28, 2025, the USPTO rescinded the June 2022 guidance in a website post. Appx80-81. On March 24, 2025, the Chief Administrative Patent Judge issued a memo ("the March 24 memo") with new institution rules, reaffirming that the long-standing *Fintiv* factors still apply and that a *Sotera* stipulation is highly relevant, but not dispositive. Appx82-84. The March 24 memo further reaffirmed that a balanced assessment of "all relevant circumstances in the case" would be considered in discretionary denial decisions, "including the strength of the merits." *Id*. Two days later, the Acting Director of the USPTO issued yet another memo ("the March 26 memo"), without notice or public comment, introducing completely new rules outside of the *Fintiv* factors. These memos established new "discretionary considerations" including: the parties' "[s]ettled expectations, such as the length of

time the claims have been in force" and "[w]hether the PTAB or another forum has already adjudicated the validity or patentability of the challenged patent claims." Appx85-87.

The March 26 memo explained nothing further about either factor, such as what "length of time" qualifies, the relevance of whether the same or different parties previously challenged the patent claims before the PTAB or another forum, or what connection either factor has to the AIA.

The new policies set in place by the March 26 memo continue to evolve, all without any notice-and-comment procedure. For example, in June, the Acting Director denied IPR institution for the first time on the ground that "the challenged patent has been in force" too long, "creating settled expectations." *Dabico Airport Sols. Inc. v. AXA Power ApS*, IPR2025-00408, Paper 21, at 2 (PTAB June 18, 2025) (Appx88-92); *see id.* at 3 ("the longer the patent has been in force, the more settled expectations should be"). This ruling led to a number of institution denials evolving the "settled expectations" rule to roughly track a patent's six-year mark. *See* Appx97-99(article); *Cambridge Indus. USA, Inc. v. Applied Optoelectronics, Inc.*, IPR2025-00433, 2025 WL 1773382 (PTAB June 26, 2025) ("strong settled expectations" existed for seven- and nine-year-old patents but not for five- and six-year-old patents); *Amazon.com, Inc. v. VirtaMove, Corp.*, IPR2025-00561, 2025 WL 1913383 (PTAB July 11, 2025) (providing no reasoning beyond "settled

8

expectations" justifying denial).  At least as of September, the Acting Director cited a new "road mapping" policy to deny IPR institution where the patent had survived a previous challenge, without consideration of any relationship between petitioners or the nature of the challenges.  *Amazon Web Servs., Inc., v. Croga Innovations, Ltd.*, IPR2025-00884, Paper 9 (PTAB September 3, 2025).  Indeed, by perversely making stronger petitions harder to institute, the ruling in this case runs counter to the Acting Director's own guidance and the AIA's language focusing on the strength of the merits, *i.e.*, whether the petitioner is reasonably likely to prevail.  It is the petition that *repeats* a prior petition's deficiency that is weaker and should be disfavored, not one that *corrects* such deficiencies and thus is likely to succeed.

Between March 26 and the September 26 denial of Petitioner's request for IPR here, a bevy of institution denials have been issued based on "settled expectations" and/or "road mapping" concerns, prior to the USPTO initiating any notice-and-comment for these ever-evolving factors.  Instead, the USPTO updates its institution guidance on a rolling basis through a website.  *See* https://www.uspto.gov/patents/ptab/interim-director-discretionary-process.

Even worse, the March 25 memo concludes: "The processes described herein are temporary in nature due, in part, to the current workload needs of the PTAB." Not only are new purported rules a vast departure from prior Board precedent, but it remains unclear how long they will remain or what further changes may be next.

**C.    The USPTO denied institution here based on "settled expectations" and "road mapping"**

On September 26, the Acting Director rejected Petitioner's IPR petition based on so-called "settled expectations" and "road mapping" rules.  Though the decision includes a token statement that the determination is "based on a holistic assessment," it focuses on "settled expectations" and "road mapping" and does not address all of the *Fintiv* factors or the fact that Petitioner's included a *Sotera* stipulation.  Appx1-5.  The Acting Director merely states that "the challenged patent has been in force for approximately nine years, creating settled expectations" and "that 'the Petition squarely addresses the deficiency identified by the Board in the prior IPR'" somehow "raises concerns of road mapping and weighs in favor of discretionary denial."  Appx2-3.

## LEGAL STANDARD

This Court has jurisdiction to review petitions for writs of mandamus "denying institution of an IPR."  *Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1381 (Fed. Cir. 2021).  A petitioner must show (1) "a clear and indisputable legal right"; (2) the lack of any "other adequate method of obtaining relief"; and (3) that "the writ is appropriate under the circumstances."  *Id*. at 1382.

## WHY MANDAMUS IS WARRANTED

### I.    The USPTO's errors are clear and indisputable

A "reviewing court shall" "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law." 5 U.S.C. §706(2). On four independent grounds, the USPTO's discretionary denial here was unlawful and must be set aside: (1) the agency ignored notice-and-comment procedures; (2) its application exceeded statutory authority and was arbitrary and capricious; (3) its application violated due process; and (4) the new institution criterion exceeds statutory authority and the agency's constitutional power.

### A.    The USPTO violated the APA and AIA by imposing limitations on institution without notice-and-comment rulemaking

The new USPTO discretionary denial practice violates a basic administrative-law requirement. Notice and comment "assure[s] fairness and mature consideration of rules of general application." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969). Agency action disregarding that procedural requirement must be set aside. *See, e.g.*, *Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affs.*, 464 F.3d 1306, 1317-19 (Fed. Cir. 2006). The USPTO's recent NPRM—issued for the first time after applying these standards for months without such procedures—

11

confirms that new policies are legislative rules that required notice-and-comment from the outset. The NPRM seeks to substantively codify these standards as categorical bases for denial: proposed §42.108(e) provides that "an IPR proceeding may not be instituted" where claims have been found valid in prior proceedings, and proposed §42.108(d) and (f) address parallel litigation and required stipulations. 90 Fed. Reg. at 48,338. These proposed rules would bind future administrations unless reversed through new rulemaking, demonstrating that the agency's prior guidance had binding legal effect and was not mere interpretive policy. *See Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 105-06 (2015) (agencies must follow APA procedures when adopting rules with binding effect); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021 (D.C. Cir. 2000) (effect, not label, determines whether policy is legislative rule). The new rules violate the APA and AIA and should be set aside.

The APA requires notice-and-comment rulemaking for substantive rules. 5 U.S.C. §553. The APA defines as a "rule" any "agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. §551(4). Substantive rules require notice and comment. 5 U.S.C. §553(b). Rules are "substantive" if they "effect a change in existing law or policy" or "affect individual rights and obligations." *Paralyzed Veterans of Am. v. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998).

The USPTO's new denial rules citing to "settled expectations" and "road mapping" are rules that apply generally and prospectively to any IPR petition, and that implement and prescribe concrete limits on IPR.

The rule is substantive many times over. To begin, it "change[s] existing law or policy" by introducing a never-seen-before IPR precondition. *Paralyzed Veterans of Am.*, 138 F.3d at 1436. Indeed, the agency has been open about a new policy approach. Appx88-92 (announcing that the USPTO, under current leadership believes that "the longer a patent has been in force, the stronger and more settled the patent owner's expectations should be" and that the PTAB review may not be appropriate "where the patent owner has already fended off prior challenges"). The USPTO's recent NPRM substantively codifies these policies as binding categorical denials under proposed 37 C.F.R. §42.108(e), confirming that the agency itself recognizes these standards as legislative rules with binding legal effect, not mere interpretive guidance.

The rules' substantive impact goes further still. They substantively affect patent owners and the public by establishing a category of "old" patents and/or patents subject to prior challenges that are protected against IPR. It also overrides Congress's substantive decisions not to impose a patent-age cap or prior-IPR-count cap for IPR eligibility or a presumption of validity for older patents or patents that were subject to a prior challenge. And it affects challengers' rights and obligations

13

by requiring premature IPR challenges early in a patent's life and before any other challenges (even by unrelated parties), or forfeiture of IPR rights.

Finally, the AIA itself separately requires notice and comment in this specific context. The AIA commands that in "setting forth the standards for the showing of sufficient grounds to institute" IPR, the agency "shall prescribe regulations." §316(a)(2); *see also* §312(a)(4) (requirements for IPR petitions, beyond those already enumerated in §312(a), must be established "by regulation"). That means notice-and-comment rulemaking. "[W]hen a statute defines a duty in terms of agency regulations, those regulations are considered legislative rules," which must be issued "pursuant to the [APA's] notice-and-comment requirements." *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 38, 40 (D.C. Cir. 2005). The USPTO has no excuse for failing to follow this basic procedure.

The resulting uncertainty underscores the need for notice-and-comment rulemaking. Nobody knows whether "settled expectations" attach at year five or six; whether a prior IPR challenge, no matter how weak, insulates that patent from further challenges; whether an IPR petition's strength on the merits will matter; or whether today's rules will apply tomorrow. The USPTO's abrupt shift from informal, procedurally defective policies to formal notice-and-comment rulemaking underscores the arbitrary and capricious evolution of its institution standards. This erratic approach has sown confusion and uncertainty among petitioners, patent

14

owners, and the entire patent community.    Moreover, the NPRM itself leaves significant gaps: it does not address pure patent-age-based IPR immunity, nor does it clarify whether "extraordinary circumstances" under proposed §42.108(g) would permit institution for strong petitions that correct deficiencies in prior challenges. The law demands more.    The USPTO, like all agencies, must follow notice-and-comment procedures to ensure "fairness and mature consideration."    *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969).

**B.    The USPTO violated the APA by applying the "settled expectations" and "road mapping" rules without authority or reasoned decision making**

Applying the "settled expectations" and "road mapping" rules also violated bedrock APA limits.    As the rules were applied, the USPTO lacked statutory authority to regulate the rules and failed to consider crucial factors. 5 U.S.C. §706(2)(A)-(D).

An agency lacks "power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *see Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*, 72 F.4th 284, 292 (D.C. Cir. 2023).    The AIA confers no power—let alone in express terms—to make IPR rules retroactive.    Yet the USPTO retroactively penalized the Petitioner for noncompliance with post-hoc rules in all the ways just discussed—including by requiring IPR filings years before the rules existed.    The agency's recent NPRM

15

cannot retroactively legitimize the prior application of these new standards to Petitioner's case. The APA does not permit agencies to cure past procedural violations after the fact, and parties subjected to the earlier, invalid rules remain prejudiced by the agency's unlawful conduct. The proposed regulations, if finalized, would apply prospectively only and cannot validate the agency's prior procedurally defective actions.

The USPTO also acted arbitrarily and capriciously, ignoring its basic "mandate to engage in reasoned decision-making under the APA." *In re Brunetti*, 151 F.4th 1367, 1378-80 (Fed. Cir. Aug. 26, 2025) (precedential). Changing policy requires "provid[ing] a reasoned explanation for the change, display[ing] awareness that they are changing position, and consider[ing] serious reliance interests." *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 568 (2025) (citation and alterations omitted). The USPTO failed to justify its post-hoc imposition of "settled expectations" and "road mapping." It never even attempted "a reasoned explanation" for imposing this new rule. *Id*.

Indeed, the USPTO failed to address *any* relevant consideration. It never acknowledged that the rules did not exist before the patents grew too "old" or had been subject to a prior IPR—let alone "display[ed] awareness" of a changed position. *Id*. It mentioned no effect on the Petitioner or "reliance interests." *Id*. It never articulated when "settled expectations" arise or whether any and all prior IPR

16

challenges pose "road mapping" issues, leaving stakeholders to scour dozens of decisions to divine some pattern.

And the agency ignored a basic logical defect at the rule's core. Patentees had no "settled expectation" that old patents were immune from challenge until the USPTO decreed it. Parties were always free to challenge a patent's validity, no matter how old. Even today, that remains true in district-court litigation. So it is unclear how patentees could have developed "settled expectations" (and for IPRs alone). And it was impossible for Petitioner to anticipate that the USPTO would create such a rule, much less the precise timing that "settled expectations" attach.

Similarly, patents that were subject to prior IPRs were not immune from challenge until the USPTO decreed it. While the USPTO has imposed limitations on the *same petitioner* filing serial IPR petitions against the same patent claims, a different petitioner was not previously prohibited from challenging a patent. *See General Plastic Industries Co., Ltd. v. Canon Kabushiki Kaisha*, IPR2016-01357, Paper 19 at 16 (PTAB Sept. 6, 2017) (precedential as to § II.B.4.i) ("*General Plastic*").

*General Plastic* addressed the situation where an earlier petition is filed by "the same petitioner." *General Plastic*, Paper 19 at 16; *see also id.* at 6–7, 10. *Valve Corp. v. Elec. Scripting Prods., Inc.*, IPR2019-00062, Paper 11 (PTAB Apr. 2, 2019) (precedential) ("*Valve*") extended the *General Plastic* framework to petitioners

having a "significant relationship." *Valve*, Paper 11 at 9–10. *General Plastic* has not been extended to any cases in which the first and second petitioners do not have a significant relationship. *See Vivendum Product Solutions, Inc. v. Rotolight Ltd.*, IPR2023-01218, Paper 12 at 6-7 (PTAB Apr. 19, 2024) (improper to "expand[] the discretionary principles set forth in *General Plastic* and *Valve* to apply to petitioners that are not the same and do not have a "significant relationship""); *Ford Motor Co. v. Neo Wireless LLC*, IPR2023-00763, Paper 28 at 11 (PTAB March 22, 2024) (a *General Plastic*-based discretionary denial was not justified when a "significant relationship" vis-à-vis the challenged patent was not present); *Cellco P'ship v. Gen. Access Sols., Ltd.*, IPR2023-00978, Paper 20 at 19 (PTAB Dec. 14, 2023) (where a legally significant relationship between the two petitioners has not been established, finding that *General Plastic* factors 2-5 "bear little relevance"); *Micron Tech., Inc. v. Sonrai Memory Ltd.*, IPR2023-00909, Paper 7 at 8 (PTAB Nov. 28, 2023) (*General Plastic* factors 1-5 weigh against denying institution where it is the first time the second petitioner challenged the patent and there is no relationship between the first and second petitioners).

The USPTO never addressed the departure from *General Plastic* and *Valve* to cases in which the first and second petitioners have no relationship. It is unclear how patents subjected to one IPR challenge are now insulated from other challenges from completely unrelated petitioners. And it was impossible for Petitioner to

anticipate that the USPTO would create such a rule, departing from the prior precedence that required the same petitioner or petitioners with a significant relationship.

The USPTO failed to confront any of that. It could not identify statutory authority or reasoned justification for imposing the new rules on Petitioner. It did not even try. That APA violation warrants mandamus.

### C.    The USPTO violated due process by unlawfully applying a new bar to this IPR petition

Application of the "settled expectations" and "road mapping" rules failed to consider serious reliance interests under the change-in-position doctrine. And that failure renders the Acting Director's action arbitrary and capricious.

Under the change-in-position doctrine, agencies may not change their existing policies unless "they provide a reasoned explanation for the change, display awareness that they are changing position, and consider serious reliance interests." *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 568 (2025) (cleaned up). Because there is no dispute that the "agency changed existing policy," the sole question presented by the doctrine here is: "Did the agency display awareness that it is changing position and offer good reasons for the new policy," while being "cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account"? *Id.* at 570 (cleaned up).

The change-in-position doctrine applies "to an agency's divergence from a position articulated in nonbinding guidance documents," including in situations "when an agency altered a position first stated in a policy statement," where "the policy statement instituted 'a standardized review process' that 'effectively' resembled adjudication." *Id.* at 569 n. 5 (quoting *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 18 (2020)).

While the March 26, 2026, memo referenced "settled expectations," just how "old" a patent must be for "settled expectations" to attach remained unknown. Further, though the March 26, 2026, memo lists "[w]hether the PTAB or another forum has already adjudicated the validity or patentability of the challenged patent claims," it also purported to be "consistent with the discretionary considerations enumerated in existing Board precedent (including … *General Plastic*, …)." Thus, at the time the petition was filed, no established guidance warranted discretionary denial of the Petition based on "settled expectations or "road mapping." It wasn't until after the Petition was filed that the first denial decisions considering "settled expectations" and "road mapping" issued. See *Dabico Airport Sols. Inc. v. AXA Power ApS*, IPR2025-00408, Paper 21, at 2-3 (PTAB June 18, 2025) (Acting Director denying IPR institution for the first time on the ground that "the challenged patent has been in force" too long, "creating settled expectations," and further declaring that "the longer the patent has been in force, the more settled expectations

should be" and that this rule applies irrespective of "actual notice of a patent or of possible infringement"); *Amazon Web Servs., Inc. v. Croga Innovations, Ltd.*, IPR2025-00884, Paper 9 at 2 (PTAB Sept. 3, 2025) (Acting Director denying IPR institution for the first time on the ground that the Petitioner's acknowledgement of prior IPRs by unrelated parties "raises concerns of roadmaping [*sic*]").

The USPTO's application of the "settled expectations" or "road mapping" rules here demonstrated a clear change in position. That violated the change-in-position doctrine, which prohibits an agency from changing policies without "provid[ing] a reasoned explanation for the change, display[ing] awareness that [it is] changing position, and consider[ing] serious reliance interests." *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 568 (2025) (cleaned up). Those decisions, as well as the March 26, 2025 memo, did not offer any *reasons* for the change in longstanding Board precedent.

In any event, offering reasons for the new policy still would not have been enough. "When an agency changes course, as [the USPTO] did here, it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 30-31 (2020) (cleaned up). Prior precedent – with the USPTO as well as district court – has never barred invalidity challenges for "old" patents. And Board precedent established by *General Plastic* and *Valve* makes clear that a prior

IPR challenge by an unrelated petitioner is not a proper factor for discretionary denial.

The Acting Director's March 26, 2025 memo does not reflect any consideration of reliance interested engendered by previous precedence; it instead purports to provide guidance "consistent with the discretionary considerations enumerated in existing Board precedent (including *Fintiv, General Plastic,* and *Advanced Bionics)* and the Consolidated Trial Practice Guide (Nov. 2019)." Appx85-86. But as applied in discretionary denial decisions, these rules reflect a clear change in policy and a departure from prior Board precedent. The new rule cannot reasonably be applied to parties that prepared and filed petitions at considerable expense, and altered their litigation strategies in reliance on prior Board precedent. *See Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 33 (D.D.C. 2019) (granting summary judgment for plaintiffs claiming that application of changed standards to deny relief was arbitrary and capricious under 5 U.S.C. §706(2)).

### D. The USPTO exceeded its authority – in violation of the APA and the Constitution – by inventing IPR institution criterion untethered to the AIA

The "settled expectations" and "road mapping" rules' most fundamental defect is that the USPTO lacks authority to create them at all. The AIA does not authorize the Director to invent institution criteria unmoored from the statute; and it

certainly does not authorize prohibiting IPR based on a maximum-patent-age cap or the fact that a claim has been subjected to a previous challenge. In imposing the "settled expectations" and "road mapping" rules, the USPTO exceeded its statutory authority and usurped Congress's legislative power. 5 U.S.C. §706(2).

### 1. Congress did not empower the Director to create extra-statutory institution criteria

Contrary to the USPTO's apparent belief, the Director does not have unfettered discretion at the institution stage. Congress outlined specific institution criteria for the Director to consider. *E.g.*, §§314(a), 315(d), 325(d). It granted discretion in applying some of *those* criteria, as well as limited authority to promulgate "regulations" implementing *those* criteria, which the agency has failed to do. §316(a)(2). But the USPTO instead is allowing the Director to invent *any* criteria—even with no basis in the AIA. *See* AD's Resp., *In re Motorola Solutions*, No. 25-134, ECF No. 28 at 8 (Fed. Cir. Aug. 4, 2025) (institution "criteria" is "entirely within the Director's discretion"). This exceeds the authority granted by Congress. Congress did not legislate a reticulated framework for the USPTO to simply disregard. While this Court has occasionally assumed the Director has broad institution discretion, it has not decided the bounds of that authority in the face of the arguments presented here. *E.g.*, *Mylan*, 989 F.3d at 1382; *Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.*, 896 F.3d 1322, 1327 (Fed. Cir. 2018). This

fundamental question needs a considered answer.  This Court should confirm the Director's power is limited by Congress's design.

In the AIA, Congress instructed the agency to *apply* statutory requirements, not create new ones.  It specified the core merits threshold in §314(a); it instructed parties to address the "requirement[s] *of this chapter*" (§313 (emphasis added)); and it set forth other reticulated considerations. Some are firm bars (§315(b)'s time limit and §315(e)'s estoppel).  Some are discretionary considerations (§315(d)'s docket-management authority and §325(d)'s anti-duplication authority).  Congress did not do that work so the USPTO could rewrite the scheme on the Director's whim.

To be sure, the Director has broad "discretion" within the AIA's statutory markers.  *Cuozzo*, 579 U.S. at 273.  But discretion *within* markers is not discretion to fashion new boundaries.  And the AIA nowhere grants the USPTO power to ignore Congress's framework and invent *new* criteria.  "Administrative agencies are creatures of statute"; they "possess only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022).

And Congress carefully specified when the Director may exercise discretion in IPR institution.  Take §325(d).  There, Congress provided that, in instituting any "proceeding under this chapter" (including IPRs), the Director "may" consider whether "the same or substantially the same prior art or arguments previously were

presented to the Office." §325(d). Congress granted the Director discretion in applying that criterion (the Director "may" reject a petition). And it authorized accompanying regulations to flesh out the standard. §316(a)(2). Those regulations must consider effects on "the patent system" (by avoiding inconsistent outcomes on the same prior art or arguments) and "efficient [agency] administration" (by avoiding redundant proceedings). §316(b). But if the USPTO already has unfettered discretion to consider anything it chooses at institution, it does not need §325(d)'s *redundant* authority to do the same thing. That express section should not be read as a mere suggestion (at best) or superfluous (at worst). *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 574-75 (1995) (avoiding such "redundan[cy]").

Or take §315(d). There, Congress authorized the USPTO to "stay, transfer, consolidat[e], or terminat[e]" related proceedings. §315(d). This expressly authorizes the Director to manage the agency's docket when overlapping proceedings are pending before the agency. Again, Congress granted discretion in applying that criterion (the Director "*may* determine" how such proceedings "may proceed" (emphasis added)), and authorized implementing regulations. §§316(a)(2), (b). Yet none of this is necessary under the USPTO's unbounded approach.

The USPTO invokes §314(a) as the source of the Director's discretion. Appx1-5; Appx85-87 (identifying §314(a) as authority for Director's "discretion"). But Section 314(a) textually imposes a direct requirement for institution: "a

25

reasonable likelihood that the petitioner would prevail." This sets the critical threshold. *See* §314(a). It does not grant the Director freestanding authority to impose *any* criteria the Director wishes—much less to abridge the universal "scope" of IPR (§311(b)). A provision that speaks in the negative and limits the Director's discretion cannot be construed as a sweeping, affirmative grant of power to deny IPR based on *any* criteria the Director chooses.

Nor does it help the USPTO that §314(a) does not *mandate* institution when the merits threshold is met. Even for petitions meeting that threshold, Congress supplied other criteria *outside* §314(a) that could still defeat institution. *E.g.*, §§315(b), (e), 315(d), 325(d). But nowhere did Congress empower the USPTO to make different choices.

Congress's express grant of discretion in two accompanying AIA sections confirms it did not grant broader discretion here. For derivation proceedings, Congress provided "the Director *may* institute" if the requisite "standards . . . are met." §135(a)(1) (emphasis added). Similarly, for joinder petitions, "the Director, *in his or her discretion*, *may* join" parties otherwise satisfying §314. §315(c) (emphasis added). No comparable authority exists for IPR institution. "When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning." *Bittner v. United States*, 598 U.S. 85, 94 (2023); *see also Gallo v.*

26

*Dep't of Transp.*, 725 F.3d 1306, 1310 (Fed. Cir. 2013) (expressio unius). Congress expressly conferred discretion elsewhere in the AIA, but not for instituting IPRs; the Court should enforce that congressional choice.

### 2. Congress did not authorize the Director to deny institution because a patent is "old"

The USPTO's new "settled expectations" rule falls outside the AIA's institution criteria and thus fails. Indeed, the rule conflicts with express congressional judgments in the AIA. Notably, the recent NPRM does not address pure age-based immunity to IPR—the basis on which the Acting Director attributes to "settled expectations" for denying Petitioner's IPR. Proposed §42.108(e) focuses on patents that have been found valid in prior proceedings, not on patent age alone. Thus, the application of age-based "settled expectations" to Petitioner's case lacks any basis in statute or properly promulgated regulation, or even in the new NPRM.

The AIA contains no cap on how "old" a patent may be to remain IPR-eligible. That was a deliberate design decision, confirmed by several additional congressional choices.

For one, Congress used a patent-age cutoff for IPR's predecessor (*inter partes* reexamination) and IPR's AIA counterpart (PGR), but not IPR. Under the prior scheme, Congress had excluded certain old patents from *inter partes* reexamination. It limited eligibility to patents issued on applications "filed . . . on or after" November 29, 1999, the act's effective date. American Inventors Protection Act of

1999, Pub. L. No. 106–113, §4608, 113 Stat. at 1501A–572. But when Congress replaced *inter partes* reexamination with IPR, it imposed no such age cutoff. Yet Congress chose differently for PGR, imposing an age cutoff there. *See* AIA §3(n)(1). Thus, for IPRs, Congress expressly *rejected* the same sort of categorical "old-patent" exclusion the Director has now implemented.

For another, Congress imposed a continuing patent-age cap for PGR but not IPR. PGR is available only until the patent is 9 months old. §321(c). IPR has no such maximum. The USPTO has no license to recalibrate that deliberate balance.

In addition, Congress chose a uniform, weaker presumption of validity in IPR. §§316(e), 282; *see Cuozzo*, 579 U.S. at 279. Congress created no extra presumption of validity for older patents.

The agency cannot invent its own rules to frustrate this intentional congressional scheme. 5 U.S.C. §706(2)(A), (C). The USPTO's new "settled expectations" rule adds a patent-age cap to IPR and an artificial presumption of validity for "old" patents. Appx1-5. That rule flouts Congress's choices, violates the separation of powers, and is an illegitimate basis for denying IPR.

### 3.    Congress did not authorize the Director to deny institution because a patent was previously challenged by an unrelated party

The USPTO's new "road mapping" rule also falls outside the AIA's institution criteria and thus fails. The AIA contains no cap on the number of

challenges to which a patent may be subject to. Prior Board precedent has limited the number of serial attacks brought by the same challenger, or challengers having a significant relationship, but challenges from unrelated parties have never been a basis for discretionary denial.

The USPTO's new "road mapping" rule does not consider what relationship, if any, exists between respective petitioners, and does not consider the strength of the subsequent petition relative to the prior petition. As implemented, the new "road mapping" rule prevents a petition that is stronger than a prior petition brought by an unrelated party because it corrects an error from that prior petition. This flout's the AIA's focus on instituting strong petitions.

§314(a), which the USPTO notes as the source of the Director's discretion, does not provide any restriction on institution of a previously challenged patent claim. *See* Appx1-5; Appx85-87. Rather, §314(a) imposes as a requirement for institution "a reasonable likelihood that the petitioner would prevail." Yet the new "road mapping" rule effectively ignores a petition's strong likelihood of prevailing in favor of a newly-invented institution criterion.

## II. The remaining mandamus criteria are satisfied

### A. The USPTO's errors are reviewable in mandamus

This Court applies mandamus review when the USPTO exceeds its legal constraints in denying institution of an IPR. *Mylan*, 989 F.3d at 1380. "In fact, when

29

the Board denies institution, our mandamus jurisdiction is especially important." *Id.*

Although "the appeal bar in §314(d) prevents any direct appeal," it does not "divest[]

[this Court] of mandamus jurisdiction." *Id.* Section 314(d) therefore does not bar

mandamus review of Petitioner's claims.

The USPTO's violations of constitutional constraints, i.e., due process and

separation of powers, are subject to mandamus review. *Mylan*, 989 F.3d at 1382-

83.

The USPTO's APA violations in disposing of the rules relied upon by

petitioners and the PTAB since June of 2022, and implementing new rules for

discretionary denial, without abiding the agency's notice-and-comment obligations,

are reviewable. As this Court already explained, §314(d) does not reach "the

Director's choice of whether to use notice-and-comment rulemaking." *Apple Inc. v.*

*Vidal*, 63 F.4th 1, 14-15 (Fed. Cir. 2023). The Supreme Court has stated that "judicial

review remains available consistent with the [APA], which directs courts to set aside

agency action 'not in accordance with law' or 'in excess of statutory jurisdiction,

authority, or limitations.'" *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 371 (2018) (quoting

5 U.S.C. §706(2)(A), (C)). The arguments above at Section I are premised on the

APA's requirements that the agency consider relevant factors, follow the notice-and-

comment requirements, and not exceed delegated authority. This request for

mandamus is thus not a challenge "where the invoked provisions of law directly govern institution." *Apple*, 63 F.4th at 11-14.

The *Mylan* rejection of a notice-and-comment challenge to a USPTO decision is distinguished from the situation here; in *Mylan*, a notice-and-comment challenge was rejected based on the merits because the mandamus petitioner failed to establish "a clear and indisputable right to relief." 989 F.3d at 1382; *id.* (not "explor[ing] the outer contours of possibility" for mandamus) 5 U.S.C. §706(2)(A), (C). That petitioner's case-specific failure does not insulate the USPTO's actions from review here.

Mandamus review here will also allow this Court to stop the USPTO from creating institution criteria beyond its delegated power. The Supreme Court has ruled that judicial review is appropriate for "shenanigans" like the USPTO has engaged in with respect to the creation of the "settled expectations" and "road mapping" rules, which are completely untethered to the AIA and "exceed[] [its] statutory authority." *SAS*, 584 U.S. at 371; *see also Cuozzo*, 579 U.S. at 275; 5 U.S.C. §706(2). That the USPTO's actions in creating these new rules constitute "shenanigans" is clear. The Acting Director has openly disagreed with Congress's IPR system, specifically maligning the "low preponderance of evidence standard" and the lack of any "window of time that closes to stop these challenges." Appx97-99. If Congress had intended there to be a window of time for IPR, it would have

implemented one—indeed, Congress did exactly that for PGR. Nor did Congress prohibit IPR against patents that were subject to any previous challenge. Indeed, IPR was created specifically to provide an improved mechanism for addressing easily obtained, yet difficult to challenge, "questionable patents." The Acting Director has wielded institution power to frustrate the goals of IPR by implementing these new "settled expectations" and "road mapping" rules.

For the foregoing reasons, the challenge to the USPTO's application of agency power here falls outside §314(d)'s bar on review of "'an ordinary dispute about the application of' an institution-related statute." *Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 54 (2020) (quoting *Cuozzo*, 579 U.S. at 271). The issues presented here regarding the USPTO's creation of new institution standards, without any notice-and-comment process, go well beyond case-specific interpretation or the mere application of institution criteria. "§314(d) does not 'enable the agency to act outside its statutory limits.'" *SAS*, 584 U.S. at 371 (quoting *Cuozzo*, 579 U.S. at 275); *see* 5 U.S.C. §706(2). The Acting Director's creation of these new, extra-statutory institution criteria without following notice-and-comment rulemaking is a "blatant violation[] of [a] legal constraint[]" that fits squarely within that preservation of judicial review. *IGT v. Zynga Inc.*, 144 F.4th 1357, 1367 (Fed. Cir. 2025).

No previous decision by this Court bars review of the underlying question here: whether Congress granted the Director unilateral authority to create institution

criteria outside the AIA's statutory framework, and to do so without notice-and-comment.  The *Apple* decision preserved mandamus review.  63 F.4th at 12 n.5.  Further, *Apple* did not address a challenge to underlying agency power, as here, but rather dealt with whether §314(d) barred a claim that the Director's criteria misapprehended §315(b)'s time bar.  That is a materially different question from whether the Director (or the Acting Director, here) possesses the unilateral authority to create new institution criteria untethered to the AIA.  *Taylor Energy Co. v. Dep't of the Interior*, 990 F.3d 1303, 1310, n.1 (Fed. Cir. 2021).

Similarly, *Mylan* does not bar the review requested here.  The *Mylan* decision did not require scrutiny of the Director's institution authority because all involved *presumed* the Director was "free" to refuse institution based on "reasons of administrative efficiency." 989 F.3d at 1382 (citing *Heckler v. Chaney*, 470 U.S. 821, 830-32 (1985)).  Here, the question is whether the agency in fact has that discretion.  The answer must be "no."  It is well-settled that "Congress may limit an agency's exercise of enforcement power" "by setting substantive priorities" or "by otherwise circumscribing an agency's power to discriminate among . . . cases it will pursue." *Heckler*, 470 U.S. at 833. Here, the agency has repeatedly exceeded the bounds set by Congress and frustrated the very purpose of IPR, rendering this case prime for mandamus review.

### B.    Petitioner has no adequate means of relief

Mandamus is the proper mechanism for "judicial review" of "decisions denying institution," "[g]iven that there is no adequate remedy by way of direct appeal," which this Court holds is barred by §314(d). *In re Palo Alto Networks, Inc.*, 44 F. 4th 1369, 1374 (Fed. Cir. 2022).

### C.    Mandamus is appropriate given the nature of the USPTO's related violations of the APA, AIA, and the Constitution

This case is a prime candidate for mandamus because it presents basic, and as-yet undecided questions regarding the USPTO's authority to unilaterally create new, extra-statutory institution standards such as the "settled expectations" and "road mapping" rules. *See In re BigCommerce, Inc.*, 890 F.3d 978, 981 (Fed. Cir. 2018). Those questions bear on the core principles of Congress's patent system and the goals of the entire IPR system. *See In re Cray Inc.*, 871 F.3d 1355, 1358-59 (Fed. Cir. 2017). The agency imposed substantive limitations on IPR institution without notice-and-comment rulemaking, exceeded its statutory authority by creating extra-statutory institution criteria, and retroactively penalized Petitioner for noncompliance with rules that did not exist when the Petition was filed. The USPTO's recent NPRM does not cure these violations; the APA does not permit agencies to legitimize past procedurally defective actions through belated rulemaking. These violations present basic and undecided questions regarding the USPTO's authority to unilaterally create new institution standards that bear on the

core principles of Congress's patent system and the goals of the entire IPR system. The USPTO's actions here impact an overwhelming number of stakeholders and have placed the entire IPR system into an ever-evolving flux, creating a landscape of confusion and uncertainty that makes it impossible for IPR petitions, patent owners, and investors to make informed decisions.

Mandamus exists to constrain agencies to act within their lawful authority. The USPTO has plainly exceeded that authority in creating new institution decisions. Thus, this is a prime candidate for mandamus review, and this Court should direct the USPTO to vacate its denial decision and reconsider institution solely under the statutory criteria and the prior binding guidance that applied when the Petition was— without the unlawful "settled expectations" and "road mapping" rules.

## CONCLUSION

The Court should direct the USPTO to apply the discretionary-denial guidance in place when the IPR petitions were filed.

Respectfully submitted,

Dated: October 21, 2025

/s/ John R. Hutchins

John R. Hutchins
Camille D. Sauer
Paul T. Qualey
BANNER & WITCOFF, LTD.
1100 13th Street, NW, Suite 1200
Washington, DC 20005
Tel: (202) 824-3000
Fax: (202) 824-3001

*Attorneys for Petitioner Maplebear Inc.*
*d/b/a/ Instacart*

**CERTIFICATE OF COMPLIANCE WITH TYPE–VOLUME LIMITATION**

This petition complies with the relevant type–volume limitations of the Federal Rules of Appellate Procedure and the Federal Circuit Rules because it has been prepared using a proportionally spaced 14-point typeface and includes 7,797 words, excluding the portions exempted by rule.

Respectfully submitted,

Dated:  October 21, 2025

/s/ John R. Hutchins

John R. Hutchins
Camille D. Sauer
Paul T. Qualey
BANNER & WITCOFF, LTD.
1100 13th Street, NW, Suite 1200
Washington, DC 20005
Tel: (202) 824-3000
Fax: (202) 824-3001

*Attorneys for Petitioner Maplebear Inc.*
*d/b/a/ Instacart*

## PROOF OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on October 21, 2025.

I further certify that this document was emailed and sent by U.S.P.S. on October 21, 2025, to lead counsel for Fall Line Patents, LLC at the following address:

> Matthew J. Antonelli
> Antonelli, Harrington & Thompson LLP
> 4306 Yoakum Blvd., Ste. 450
> Houston, TX 77006

I further certify that courtesy copies of this document were sent to counsel above (Matthew J. Antonelli) and the following additional counsel of record for Fall Line Patents, LLC, on October 21, 2025:

> Larry D. Thompson, Jr. (larry@ahtlawfirm.com)
> Zachariah S. Harrington (zac@ahtlawfirm.com)
> Rehan M. Safiullah (rehan@ahtlawfirm.com)
> Hannah D. Price (hannah@ahtlawfirm.com)
> Terry L. Watt (TLWatt@FellersSnider.com)

I further certify that this document was sent to efileSO@uspto.gov and also by U.S.P.S. to the following address on October 21, 2025:

> Office of the Solicitor
> United States Patent and Trademark Office
> Mail Stop 8
> P.O. Box 1450
> Alexandria, Virginia 22313-1450

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct

Dated:  October 21, 2025                    /s/ John R. Hutchins
                                            John R. Hutchins